IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **CLARK H. HENDERSON,** <br><br> Plaintiff, <br><br> v. <br><br> **HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, DISCOVER FINANCIAL SERVICES WELFARE BENEFIT PLAN AND GROUP LONG TERM DISABILITY PLAN FOR EMPLOYEES OF DISCOVER FINANCIAL SERVICES,** <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:11CV187DAK <br><br> Judge Dale A. Kimball |

This matter is before the court on Plaintiff Clark H. Henderson's Motion for Summary Judgment, Defendants Hartford Life and Accident Insurance Company ("Hartford") and Discover Financial Services Welfare Benefit Plan and Group Long Term Disability Plan for Employees of Discover Financial Services ("Discover") Joint Motion for Summary Judgment, and Defendants Joint Motion to Strike Declaration of Brian S. King.  The court held a hearing on the motions on June 20, 2011.  At the hearing, Plaintiff was represented by Brian S King, Defendant Hartford was represented by Scott M. Peterson and David R. Hague, and Defendant Discover was represented by David P. Williams.  The court took the motions under advisement. Having fully considered the motions as well as the facts and law relevant to the motions, the court enters the following Memorandum Decision and Order.

# BACKGROUND

Plaintiff Clark Henderson appeals Defendants' denial of disability benefits.  Plaintiff has a claim for both short-term disability benefits and long-term disability benefits.  Due to significant back pain, Plaintiff stopped working on June 9, 2008.  He had been employed at Discover Financial Services as its Marketing Services Department Manager.  While employed at Discover, Plaintiff was a participant in the short-term disability plan ("STD Plan") and the long-term disability plan ("LTD Plan") that Discover sponsors for its employees.  The STD Plan is self-funded by Discover and administered by the Reed Group, whereas Hartford insures and administers the LTD Plan.

## A.  STD Benefits

Plaintiff received short-term disability benefits for his back pain from June 10, 2008 until August 31, 2008.  STD benefits are payable when an eligible employee has been disabled for longer than seven consecutive days and can be paid for up to 25 weeks.  The STD Plan defines "disabled" as follows:  "You are considered disabled if, based on medical information provided by your physician, the claims administrator determines that as a result of illness, injury or pregnancy you are not working in any occupation and you are: Unable to perform the essential functions of your regularly scheduled occupation, or Unable to perform any other job Morgan Stanley offers you for which you are qualified."

On July 8, 2008, Plaintiff's chiropractor recommended a return to work date of July 21, 2008.  Also on that date, Dr. Jeffrey Ayers noted that Henderson could not return to work until they have better control of Plaintiff's pain and that he anticipated Plaintiff's return to work date would be August 1, 2008.  When Reed Group contacted Henderson about returning to work, he

stated that he could not return and was scheduled for a neurological consult with Dr. Nathan on August 12, 2008. Plaintiff's chiropractor sent an updated return to work order stating that Henderson should be kept at home until August 12, 2008.

On August 12, 2008, Plaintiff had the consultation with Dr. David Nathan. Dr. Nathan opined that Plaintiff should not sit for more than twenty minutes at a time, but there was no mention that Plaintiff could not work. On August 26, 2008, Plaintiff had a physical exam from Dr. Dall. Dr. Dall stated that Plaintiffs options were doing nothing, injections, or surgery. He also stated that there would be no harm in Plaintiff going back to work and he prescribed Plaintiff a pain reliever.

The parties stipulate that the Reed Group terminated Plaintiff's STD benefits in a letter dated August 26, 2008, stating that he no longer met the definition of disability under the STD Plan. Plaintiff appealed the denial on August 29, 2008, stating that he was actively pursuing treatment with a number of physicians. On October 1, 2008, before a decision was made on his STD benefits, Plaintiff submitted an addendum to his appeal, including detailed information about his condition and medical care.

On October 21, 2008, Reed Group conducted a clinical review of all the medical records received to date. On October 22, 2008, Reed Group denied Plaintiff's appeal because the medical information did not contain objective medical documentation supporting the medical condition and the limitations caused by the condition. Reed Group concluded that there was no evidence to show that Plaintiff was not able to perform the essential functions of his job. Physical examination did not show any functional limitations of a severity which would preclude Plaintiff from performing the essential functions of his job and did not address why Plaintiff was unable

to return to work with or without restrictions.

On October 24, 2008, Plaintiff's doctor released him to return to work on October 27, 2008, on a part-time basis with accommodations.  On October 28, 2008, Henderson tried to return to work, but because he had exhausted his FMLA leave, he was not offered his same position and needed to search for another job in the department.  On October 30, 2008, Discover notified Plaintiff that he must secure a position and return to work no later than January 31, 2009.  However, Plaintiff was unable to return to work because he had a lumbar discectomy on January 27, 2009, and required rehabilitation afterward.

On December 16, 2008, Plaintiff had two doctor appointments.  With Dr. Dall, Plaintiff reported improvement and stated that he had only had a couple of really bad days in the last month.  Dr. Dall did not describe or place any functional limitations or restrictions on Plaintiff.  With another doctor, who Plaintiff visited for the first time, Dr. Angela Krull, Plaintiff reported that he had experienced no improvement for the past six months.  Dr. Krull recommended epidural injections and possibly surgery.  Plaintiff opted for the surgery, which he had on January 27, 2009.

On February 3, 2009, Plaintiff again appealed the termination of his STD benefits.  Reed Group had Reliable Review Services perform a record review of Plaintiff's claim. The review concluded that there was no objective findings to support impairment prior to the January discectomy but that Plaintiff would have impairment during his recovery period after surgery.  There is no letter from the Reed Group denying Plaintiff's February 2009 appeal in the record.  However, there is a letter from Plaintiff's counsel referring to the denial letter from the Reed Group.

**B. LTD Benefits**

Discover's LTD Plan is insured and administered by Hartford. Despite the fact that Reed Group denied Plaintiff's STD benefits from August 2008 to January 2009, Hartford approved Plaintiff for LTD benefits beginning December 7, 2008. Plaintiff continued to receive LTD benefits until he received a letter stating that his claim was terminated as of August 31, 2009.

As Hartford administered Plaintiff's claim, it obtained a Medical Questionnaire from Plaintiff's treating physician, Scott Adelman, dated July 28, 2009. Dr. Adelman opined that Plaintiff is capable of performing full-time work that is primarily seated in nature and allows him the opportunity to stand and stretch as needed. After reviewing Plaintiff's job duties, Hartford determined that Plaintiff did not meet the definition of disabled under the LTD Plan and denied further LTD benefits after August 31, 2009.

Plaintiff notified Hartford that he intended to appeal the denial. Plaintiff requested and received several extensions of time to submit evidence for his appeal. Eight months later, Plaintiff appealed the denial in a letter dated May 14, 2010. Hartford reviewed the appeal letter and all the additional information Plaintiff submitted, including a functional capacity evaluation ("FCE") report completed on April 15, 2010 by Mark D. Anderson, PT. Hartford also sent requests for updated medical records to Dr. Adelman and requested Dr. Lippman to conduct an IMR of Plaintiff's claim.

Based on the administrative record and Dr. Lippman's IMR, Hartford upheld its denial of LTD benefits but recognized that Plaintiff may have required time off from work to recover from certain surgeries and treatments he received from September 1, 2009 to April 15, 2010. Accordingly, Hartford paid Plaintiff additional LTD benefits from September 1, 2009 to April

15, 2010.  Hartford informed Plaintiff of these additional LTD benefits in a letter dated July 29, 2010.  The letter also informed Plaintiff that, because it was otherwise upholding its denial of LTD benefits, he had exhausted his ability to appeal Hartford's denial.

## DISCUSSION

### Cross Motions for Summary Judgment

Plaintiff argues that Defendants wrongfully denied his claim for STD and LTD benefits, whereas Defendants argues that the Plan Administrators' decisions denying both types of benefits are supported by substantial evidence in the record.  Before reaching the merits of the challenge to the administrators' decisions, the parties dispute the applicable standard of review.

### I.  Standard of Review

The United States Supreme Court has held that a denial of benefits challenged under ERISA, "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  When the plan grants discretionary authority to the administrator, the denial of benefits is reviewed under the "arbitrary and capricious" standard.  *Chambers v. Family Health Corp.*, 100 F.3d 818, 825 (10th Cir. 1996).

### A.  STD Plan

Plaintiff argues that the STD Plan does not grant the plan administrator discretion because it makes no mention of discretion.  Discover, however, argues that the plan language providing that the administrator "determines" the benefits is sufficient under prior Tenth Circuit case law.  *Winchester v. Prudential Life Inc. Co.*, 975 F.2d 1479, 1483 (10th Cir. 1992) (finding

that "the Claim Administrator determines the benefits" to be sufficient to invoke arbitrary and capricious standard of review).

Based on *Nance v. Sun Life Assurance Co.*, 294 F.3d 1263, 1268 n.3 (10th Cir. 2002), Plaintiff asks the court to find the term "determines" insufficient to convey discretion to the plan administrator. However, since *Nance,* the Tenth Circuit has continued to find such language sufficient. The Tenth Circuit "does not require 'any magic words, such as 'discretion,' 'deference,' 'construe' or 'interpret' in order to find discretionary authority. And the Circuit has been 'comparatively liberal in construing language to trigger the more deferential standard of review under ERISA.'" *Eugene S. v. Horizon Blue Cross Blue Shield*, 2010 WL 5300897, *2 (D. Utah Dec. 22, 2010) (citations omitted). Based on the Tenth Circuit's comparatively liberal standard, this court finds the language of the STD Plan sufficient to convey the discretion necessary for an arbitrary and capricious standard of review.

Plaintiff, however, argues that there is another independent reason that the standard of review is de novo instead of arbitrary and capricious. Plaintiff contends that neither Discover nor its agent, Reed Group, ever provided a final denial of Plaintiff's February 3, 2009 appeal. When a plan administrator fails to make a final determination about a plan participant's eligibility for benefits, the plan administrator has not exercised its discretion and there is no decision to which a court can defer. Defendants, however, argue that Plaintiff's contention has no factual basis given the record before the court.

While the actual denial letter is not contained in the administrative record, the record shows that the letter was sent and received by Plaintiff. The Reed Group's system recorded a letter sent to Plaintiff on March 13, 2009 as a denial. The evidence also includes a letter from

Plaintiff's counsel to Reed Group referencing the March 13, 2009 denial letter: "On March 13, 2009, Reed Group wrote to Clark, upholding its denial based on a physician file review by a neurologist.  Reed Group determined that: Based on the objective medical information provided, the claimant was able to work without restrictions from 8/18/2008 until undergoing surgery on 1/27/2009."  Thus, the court finds that Plaintiff received a denial, the denial was sufficient for his counsel to challenge it, and this alleged procedural irregularity does not provide a basis for a de novo standard of review.

Finally, Plaintiff argues that the only plan Discover has submitted to demonstrate a grant of discretion is a summary plan description ("SPD"), which is not considered part of the plan under *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1877 (2011).  Discover asserts, however, that the SPD is the only plan document for Discover's STD benefits because the STD Plan is self-funded.

In *Eugene S. v. Horizon Blue Cross Blue Shield*, 663 F.3d 1124 (10th Cir. 2011), the court explained that it interprets "*Amara* as presenting either of two fairly simple propositions, given the factual context of that case: (1) the terms of the SPD are not enforceable when they conflict with governing plan documents, or (2) the SPD cannot create terms that are not also authorized by, or reflected in, governing plan documents." *Id.* at 1131.  The court then states that it "need not determine which is the case here, though, because the SPD does not conflict with the Plan or present terms unsupported by the Plan; rather, it *is* the Plan." *Id.*

Similarly, in this case, Discover represents that there is not a master plan document for the STD Plan.  As in *Eugene*, the SPD is the plan.  Unlike *Amara*, this case does not present conflicting terms or requirements between an SPD and governing plan documents.  Accordingly, the terms of the SPD govern because there are no other mater plan documents.

**B. LTD Plan**

With respect to the LTD Plan, Plaintiff recognizes that the plan language grants the plan administrator discretion and, thus, the standard of review for this claim is arbitrary and capricious. Plaintiff, however, contends that Hartford operates under an inherent conflict of interest and that the record demonstrates procedural irregularities which significantly decrease the arbitrary and capricious standard of review.

As both the administrator of the LTD Plan and the payor of benefits under that plan, Hartford operates with an inherent conflict of interest. *Metropolitan Live Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). In *Glenn*, the Supreme Court directed that this conflict should be considered as one of many factors by courts in determining whether an abuse of discretion occurred. *Id.* But the Court also made clear that the actual abuse of discretion standard remains unchanged. *Id.* Whether this conflict plays a major or minor role in the review depends on the circumstances of the case.

Similarly, the Tenth Circuit has said that although the arbitrary and capricious standard requires the court only to ask whether the interpretation of the plan was reasonable and made in good faith, court's dial back deference "if 'a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest.' In such a situation, that 'conflict should be weighed as a factor in determining whether there is an abuse of discretion.'" *Weber v. G.E. Life Assur. Co.*, 541 F.3d 1002 (10th Cir. 2008).

The court recognizes that there are pressures on Hartford to compete with other insurers in the marketplace and to meet shareholder expectations, but there is little evidence in the record that this inherent conflict of interest played a role in Hartford's decisions. Hartford took efforts

to mitigate the effect of the structural conflict by having an independent medical review conducted and following the conclusions of that review.  Although the conflict may allow for a slight decrease in the deference afforded, Plaintiff has not demonstrated the need for any significant decrease.

Plaintiff, however, also argues that Defendants' failure to allow Plaintiff to appeal its July 29, 2010 letter denying LTD benefits after April 15, 2010, is such a significant procedural irregularity that it should significantly decrease the level of deference given to Hartford's decision.  In addition, Plaintiff argues that the procedural violation is so significant as to require reversal of Hartford's decision under any standard of review.  Hartford's July 29, 2010 letter granted additional LTD benefits until April 15, 2010, but denied them after that date.  Plaintiff contends that decision reversed the prior denial and created a new denial of benefits after April 15, 2010, which triggered an obligation to provide Plaintiff with an opportunity to support his claim that benefits should continue after April 15, 2010.  Hartford, however, contends that the July 29, 2010 letter did not trigger a new right of appeal because it upheld the prior denial and merely granted a period of additional benefits.  This dispute actually goes to the merits of Plaintiff's challenge.  Therefore, rather than address this issue for purposes of the correct standard of review, the court will address it with respect to the merits of Plaintiff's challenge to Hartford's decision.

## II. Merits of Challenge to Plan Administrators' Decisions

### A. STD Plan

Plaintiff argues that it was improper to deny STD benefits for a lack of "objective" evidence to support Henderson's claim for disability when the STD Plan does not require

objective evidence for eligibility. Defendants assert the Reed Group's decision was not based only on a lack of objective evidence and the decision is supported by substantial objective and subjective evidence in the administrative record.

Relying on two cases from courts in the Ninth Circuit, Plaintiff asserts that it is improper for the STP Plan to impose extra-contractual requirements as a prerequisite to receiving benefits. *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 523 F. Supp. 2d 1132, 1138-46 (C.D. Cal. 2007) (considering subjective evidence in chronic fatigue syndrome important because condition does not have a generally accepted "dipstick test"); *Hagerty v. American Airlines LTD Plan*, 2010 U.S. Dist. LEXIS 91995 (N.D. Cal.) (requiring objective evidence of complaints, such as fatigue, that are subjective in nature when plan does not require it suggests abuse of discretion). Defendants argue that the cases relied on by Plaintiff for the proposition that Defendants improperly added an objective requirement do not support his argument because they involve conditions that are inherently subjective in nature whereas back pain has objective evidence.

In *Rizzi v. Hartford Life and Accident Ins. Co.*, 383 Fed. Appx. 738 (10th Cir. 2010), the Tenth Circuit rejected a plaintiffs attempt to compare her reports of pain in connection with mild disc herniation with the subjective nature of fibromyalgia. The court also acknowledged that a plan administrator "need not ignore reliable medical evidence in deference to subjective reports; nor is it unreasonable to expect some supporting evidence to buttress a claim of disability." *Id.* at 753.

Similarly, in *Flanagan v. Metropolitan Life Ins.*, 251 Fed. Appx. 484 (10th Cir. 2007), the Tenth Circuit found that "a rational plan administrator could reject a doctor's report when there

11

was no accompanying clinical data to support the conclusion." *Id.* at 489. The court upheld the plan administrator's decision to deny benefits even though the plan language did not specifically require objective proof of disability, noting that the record contained only subjective evidence without "appropriate clinical evidence to establish disability." *Id.*

Therefore, the court concludes that relevant Tenth Circuit case law demonstrates that in cases where objective evidence of a disability is available, such as with complaints of back pain, the administrator can look to objective information. *Flanagan v. Metropolitan Life Ins.*, 251 Fed. Appx. 484, 489 (10th Cir. 2007); *Rizzi v. Hartford Life and Accident Ins. Co.*, 383 Fed. Appx. 738, 753 (10th Cir. 2010).

In this case, there are records from Plaintiff's doctors during the time period in dispute stating that Plaintiff could return to work. Plaintiff argues that it is inappropriate for there to be a three month gap between Plaintiff's STD benefits and LTD benefits. Plaintiff contends that during that three month period he was continuously disabled and there is no evidence in the record that Plaintiff's condition improved. But, there is substantial evidence during the disputed three-month period to the effect that Plaintiff could work. The clinical evidence demonstrates that only minor restrictions were placed on Plaintiff during that time and those restrictions would not have kept Plaintiff from working. In December 2008, there is a note from Dr. Dall that Plaintiff reported improvement in the pain and that he had only had a couple of really bad days in the last month. The court concludes that Reed Group's consideration of, and reliance on, objective clinical data was entirely reasonable in this case, particularly given the inconsistent subjective complaints by Plaintiff. There is substantial evidence to support Reed Group's decision that the record contains no objective or subjective evidence that Plaintiff was unable to

12

perform the essential functions of his job. Therefore, Reed Group's denial of STD benefits was neither arbitrary nor capricious.

**B. LTD Benefits**

Plaintiff argues that Hartford's July 29, 2010 Letter stating that no further appeal of the April 15, 2010 denial of benefits was available is a violation of ERISA's requirements found in 29 C.F.R. § 2560.503-1. The regulations require that " a claimant shall have a reasonable opportunity to appeal an adverse benefit decision to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1).

In this case, Hartford paid LTD benefits from December 7, 2008 through September 2009. Plaintiff appealed the September 2009 denial. In a letter dated July 29, 2010, Defendant granted Plaintiff LTD benefits from September 2009 until April 15, 2010, but denied benefits after that date. The letter also stated that no further appeal was available.

Plaintiff argues that the July 29, 2010 payment of benefits from September 2009 through April 15, 2010, constituted a reversal of Defendants' previous denial and Hartford's new denial of benefits after April 15, 2010, a date first identified in that letter, triggered an obligation to allow Plaintiff the opportunity to submit additional information in support of his claim that benefits should continue after April 15, 2010. Hartford, however, argues that the July 29, 2010 letter clearly upheld its prior denial but recognized that, due to Plaintiff's surgeries during the disputed time, he could be granted some additional benefits for recuperation time. Because Hartford classified the July 29, 2010 letter as upholding its prior denial of benefits, it deemed Plaintiff's appeal rights exhausted under ERISA.

perform the essential functions of his job. Therefore, Reed Group's denial of STD benefits was neither arbitrary nor capricious.

**B. LTD Benefits**

Plaintiff argues that Hartford's July 29, 2010 Letter stating that no further appeal of the April 15, 2010 denial of benefits was available is a violation of ERISA's requirements found in 29 C.F.R. § 2560.503-1. The regulations require that " a claimant shall have a reasonable opportunity to appeal an adverse benefit decision to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1).

In this case, Hartford paid LTD benefits from December 7, 2008 through September 2009. Plaintiff appealed the September 2009 denial. In a letter dated July 29, 2010, Defendant granted Plaintiff LTD benefits from September 2009 until April 15, 2010, but denied benefits after that date. The letter also stated that no further appeal was available.

Plaintiff argues that the July 29, 2010 payment of benefits from September 2009 through April 15, 2010, constituted a reversal of Defendants' previous denial and Hartford's new denial of benefits after April 15, 2010, a date first identified in that letter, triggered an obligation to allow Plaintiff the opportunity to submit additional information in support of his claim that benefits should continue after April 15, 2010. Hartford, however, argues that the July 29, 2010 letter clearly upheld its prior denial but recognized that, due to Plaintiff's surgeries during the disputed time, he could be granted some additional benefits for recuperation time. Because Hartford classified the July 29, 2010 letter as upholding its prior denial of benefits, it deemed Plaintiff's appeal rights exhausted under ERISA.

ERISA requires a plan administrator to afford a claimant a reasonable opportunity to appeal a denial of benefits. Settled Tenth Circuit precedent explains that "receiving a 'full and fair review' requires 'knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.'" *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992).

Hartford's decision appears to have complied with these requirements. Plaintiff claims that Hartford simply chose to terminate his LTD benefits on an arbitrary date without seeking any additional information from him about what had occurred between the time he filed his appeal and the date of the denial letter in July, 2010. This argument, however, ignores the fact that Hartford had information regarding Plaintiff's medical conditions and continued eligibility for benefits relating to the April 15, 2010 date. Plaintiff submitted his appeal in May, 2010, and included updated medical information. Hartford had the FCE report completed on April 15, 2010 by Mark D. Anderson, PT. Hartford also sent requests for updated medical records to Dr. Adelman and requested Dr. Lippman to conduct an IMR of Plaintiff's claim.

Hartford upheld its denial of LTD benefits following April 15, 2010, based in large part on the FCE completed on April 15, 2010. In considering the information Plaintiff submitted, Hartford also requested clarification from Plaintiff's treating physician, Dr. Adelman. Dr. Adelman opined that the FCE actually "elevates" Plaintiff's ability to return to work. Rather than rely only on the FCE and Dr. Adelman, Hartford also requested an IMR of Plaintiff's claim from Dr. Lippman. After reviewing Plaintiff's medical records, the FCE, and Dr. Adelman's opinions, Dr. Lippman concluded that Plaintiff is capable of performing light physical work for 3

hours of an 8-hour day and that he could work the remainder of the day on a sedentary basis. Therefore, the assertion that Hartford did not have adequate information regarding Plaintiff's condition as of April 15, 2010, is belied by the record.

With respect to the disclosure of relevant documents used during the appeal, the regulations only require disclosure of the documents generated or relied upon during the initial claims determination prior to or at the outset of an administrative appeal, and disclosure of documents generated during the administrative appeal after a final decision on appeal. *Metzer v. Unum Life Ins. Co.*, 476 F.3d 1161, 1167 (10th Cir. 2007). "Permitting a claimant to receive and rebut medical opinion reports generated in the course of an administrative appeal – even when those reports contain no new factual information and deny benefits on the same basis as the initial decision – would set up an unnecessary cycle of submission, review, re-submission, and re-review." *Id.*

Plaintiff disputes that *Metzger* relevant in this case. But Dr. Lippman's report only analyzed evidence already known to Plaintiff, including the FCE report, and contained no new factual information or novel diagnoses. ERISA regulations and case law do not require Hartford to give Plaintiff an opportunity to rebut Dr. Lippman's medical opinion during the administrative appeal process. The bases for Hartford's denial of LTD benefits did not change and were clearly provided to Plaintiff when his benefits were first denied and then denied on appeal. Plaintiff took advantage of his appeal rights and submitted additional evidence and information over the course of an eight-month period. However, Hartford had substantial evidence in the record demonstrating that Plaintiff did not meet the requirements for benefits as of April 15, 2010. Plaintiff has not demonstrated how an additional appeal would have changed that determination

other than to assert that he had several treatments and procedures after that date. Even if the court considers these later treatments, however, there is no evidence that the later treatments, alone, demonstrate continuous disability under the terms of the LTD Plan. Hartford's denial of benefits was based on the results of an FCE and the opinion of Plaintiff's own treating physician. The court does not conclude that such a decision was arbitrary and capricious. Nor does the court believe that Plaintiff is entitled to successive appeals. Accordingly, the court upholds Hartford's decision.

### Defendants' Joint Motion to Strike Declaration of Brian S. King

Defendants move to strike the Declaration of Brian S. King, Plaintiff's counsel, for three reasons. First, Defendants assert that Mr. King is plaintiff's counsel in this case and he cannot testify as a fact witness. Second, Defendants argue that the declaration contains hearsay, lacks foundation, and lacks personal knowledge of the affiant. Third, Defendants contend that the declaration improperly purports to introduce evidence outside the administrative records.

The declaration lists medical procedures and treatments Plaintiff underwent after his LTD benefits were denied. Plaintiff argues that the declaration provides information allowing this court to recognize that Plaintiff remained disabled after April 15, 2010, and Hartford's failure to provide a right of appeal was not simply a technical or inconsequential violation of ERISA regulations. The court, however, has already concluded that a cursory list of procedures, alone, does not demonstrate continuous disability. In addition, the court has concluded that ERISA case law and regulations do not provide Plaintiff the right to successive appeals in this instance. Although Defendants' arguments on the motion to strike are technically correct, based on the court's rulings on the merits of Plaintiff's challenges to the plan administrators' decisions, the

court finds the motion to strike moot.

## CONCLUSION

Based on the above reasoning, Defendants' Joint Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and Defendants' Joint Motion to Strike is MOOT. The Clerk of Court is directed to close the case. Each party shall bear its and his own fees and costs.

DATED this 26th day of June, 2012.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge